UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ROBERT CASSANESE,

    Plaintiff,

v.                                              CASE NO: 8:08-cv-373-T-26MAP

UNITED HEALTHCARE INSURANCE
COMPANY,

    Defendant.
_____/

## O R D E R

Before the Court is Defendant's Motion for Summary Judgment, Statement of Undisputed Facts, and the supporting affidavit of Paulette Copp (Dkts. 9, 11 & 13), and Plaintiff's Memorandum in Opposition. (Dkt. 14). After careful consideration of the motion and the file, the Court finds that the motion should be granted.

### FACTUAL BACKGROUND

Plaintiff Robert Cassanese is an employee covered by a welfare benefit plan governed by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA) and provided by his employer, Tampa Bay Downs, Inc. The plan was issued in January 2007 by Defendant United HealthCare Insurance Company (United).[1] Beginning in January 2007, Cassanese filed several claims for medications prescribed for

---

[1] See docket 9, Exh. A.

his chronic back pain.  United covered all medication claims except for Fentora, after the first time it was filled, and Actiq.[2]

Cassanese was being treated for pain management, not cancer.  Actiq and Fentora are covered medications under the plan if prescribed for cancer only.  On January 9, 2007, United denied Cassanese's physician's request for Actiq Lollipop for the following reason:

> Coverage of this medication is provided for the treatment of breakthrough cancer pain in patients who have not had relief from their other pain medications.  The information given by your prescriber indicates that the use of this medication does not meet your plan's requirements for coverage.

Dkt. 9, Exh. B, pp. 0002-0004).  Cassanese's prescribing physician appealed the denial on behalf of his patient, Cassanese.  (Dkt. 9, Exh. B pp. 0012-0013).  He wrote that Fentora was medically necessary for Cassanese based on the diagnosis of severe post lamenectomy syndrome and neuropathic pain.  (Dkt. 9, Exh. B, p. 0012).  The letter claims that Cassanese had tried other medications, leaving Fentora as the "only medication that has successfully reduced pain and allowed the patient to function at a reasonable standpoint."  (Dkt. 9, Exh. B, p. 0013).  On June 6, 2007, United denied the appeal based on the following reasoning:

> According to the notification criteria for this medication, Fentora 800 mcg is only covered for the management of

---

[2] These two drugs are not generic equivalents, although they share almost identical label requirements. (Dkt. 9, Exh. B, pp. 0050 & 0052—"Fentora is a distinct formulation of fentanyl and is NOT a generic version of Actiq").

>       breakthrough cancer pain in patients who are tolerant to
>       opioid therapy for their underlying persistent cancer pain.

(Dkt. 9, Exh. B, pp. 0009-0011).

The medication guide, which is approved by the U.S. Food and Drug Administration (FDA), restricts Actiq's use "to treat breakthrough pain in adult patients with cancer (16 years of age and older) who are already taking other opioid pain medicines for their constant (around-the-clock) cancer pain." (Dkt. 9, Exh. B, p. 0034). Whereas Actiq is an oral transmucosal fentanyl citrate, Fentora is a fentanyl buccal tablet. (Dkt. 9, Exh. B, pp. 0036 & 0056). Actiq is administered by holding an opened blister packet by its handle and placing it between the cheek and gum while sucking, and Fentora is a tablet that is dissolved between the cheek and gum. (Dkt. 9, Exh. B, pp. 0036 & 0056). Fentora's medication guide provides that it is used for the same condition— "to treat breakthrough pain in adult patients with cancer (18 years of age and older) who are already taking other opioid pain medicines for their constant (around-the-clock) cancer pain." (Dkt. 9, Exh. B, p. 0054). The guide stresses that Fentora should not be substituted for Actiq, for those patients switching to Fentora, unless a conversion chart is followed to ensure the proper dosage. (Dkt. 9, Exh. B, pp. 0050-0052). The medication guides for both Actiq and Fentora recognize that medicines are sometimes prescribed for purposes other than those listed in the medication guide and warn to use it only as prescribed. (Dkt. 9, Exh. B., pp. 0039 & 0059).

The record indicates that Actiq and Fentora were initially approved for usage in cancer patients by United's Clinical Pharmacy Programs in February 2003 with revisions in 2006 and 2007. (Dkt. 9, Exh. B, p. 0195). The approval process and subsequent action letters from the FDA reveal that the process was not without its glitches. (Dkt. 9, Exh. C). The specific criteria set forth by United limits coverage for both Actiq and Fentora to a patient who is being prescribed these drugs "for the management of breakthrough cancer pain" and who is "already receiving and is opioid tolerant to narcotic therapy." (Dkt. 9, Exh. B, pp. 0195 & 0197). For these two drugs, United automatically conducts a coverage review process. (Dkt. 9, Exh. B, p. 0197). The coverage review process begins if the computer does not find pre-determined markers in the consumer's demographics and prescription history or if the prescription is for a medication without "smart rules." (Dkt. 9, Exh. B, p. 0197). Cassanese's prescription history indicates that in February 2007 United did in fact cover his Fentora prescription.[3] (Dkt. 9, Exh. B., p. 0199). There is no indication in the record why it was permitted in February 2007.

## PLAN LANGUAGE

United requires notification from the prescribing provider for certain medications before coverage will be extended. The pertinent provision of the plan regarding the underlying purpose of notification reviews includes the following:

---

[3] The cost of the prescription was $4,315.00, with an allowed amount of $3,669.24, a copay amount of $50, and a paid amount by United of $3,619.24. (Dkt. 9, Exh. B, p. 0199).

> The reason for notifying us is to determine whether the prescription drug product, in accordance with our approved guidelines, is each of the following:
>
> It meets the definition of a covered health service.
> It is not experimental, investigational or unproven.

(Dkt. 9, Exh. B, p. 0010— Section 1 of the Outpatient Prescription Drug Rider). The plan further states that benefits may not be available for the prescription drug product if United determines that the drug is experimental, investigational or unproven. (Dkt. 9, Exh. B., p. 0010). Under the section titled "Experimental, Investigational or Unproven Services," the plan excludes all of these types of services with certain listed exceptions not applicable in this case. (Dkt. 9, Exh. B, p. 0106). Benefits for these services is not paid even if it is "recommended or prescribed by a physician" or it is "the only available treatment for your condition." (Dkt. 9, Exh. B, p. 0105).

Experimental or investigational services are defined in pertinent part by the plan as follows:

> medical, surgical, diagnostic, psychiatric, substance abuse or other health care services, technologies, supplies, treatments, procedures, drug therapies or devices that, at the time we make a determination regarding coverage in a particular case, are determined to be any of the following:
>
> Not approved by the U.S. Food and Drug Administration (FDA) to be lawfully marketed for the proposed use and not identified in the American Hospital Formulary Service or the United States Pharmacopoeia Dispensing Information as appropriate for the proposed use.

(Dkt. 9, Exh. B, p. 0152). The plan defines unproven services as those "not consistent with conclusions of prevailing medical research which demonstrate that the health service has a beneficial effect on health outcomes." (Dkt. 9, Exh. B, p. 0155). The definition further provides that decisions about covering new treatments "will be consistent with conclusions of prevailing medical research, based on well-conducted randomized trials or cohort studies." (Dkt. 9, Exh. B., p. 0156).

The plan vests total discretion in United in the implementation of the policy. The following language articulates the discretion:

> We have sole and exclusive discretion to do all of the following:
>
> — Interpret Benefits under the Policy.
>
> — Interpret the other terms, conditions, limitations, exclusions set out in the Policy, including this Certificate of Coverage and any Riders and Amendments.
>
> — Make factual determinations related to the Policy and its Benefits.
>
> We may delegate this discretionary authority to other persons or entities who provide services in regard to the administration of the Policy.
>
> In certain circumstances, for purpose of overall cost savings or efficiency, we may, in our sole discretion, offer Benefits for services that would otherwise not be Covered Health Services. The fact that we do so in any particular case shall not in any way be deemed to require us to do so in other similar cases.

(Dkt. 9, Exh. B, p. 0144).

**STANDARD OF REVIEW**

This case falls under the category of ERISA cases involving a conflict of interest because United as the administrator of the plan also acts as a fiduciary and makes discretionary decisions, all while serving as the insurance company paying the claims out of its own assets.  See Metropolitan Life Ins. Co. v. Glenn, ___, U.S. ___, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008) (holding that where plan administrator is not the employer but is itself a professional insurance company, a conflict exists).  Both parties agree that "the heightened arbitrary and capricious" standard of review once recognized in this Circuit[4] would apply.  The heightened standard, which was considered even stricter than the de novo standard, is no longer employed, however, in this Circuit.  See Doyle v. Liberty Life Assurance Co. of Boston, ___ F.3d ___, 2008 WL 4272748, * 6 (11th Cir. Sept. 18, 2008).[5]  The Eleventh Circuit receded from this standard based on Glenn's implicit partial overruling of Williams.  Doyle, 2008 WL 4272748, * 6.  A conflict of interest is now simply a factor to be weighed in the determination of whether the administrator's decision was reasonable.  Doyle, 2008 WL 4272748, *7-8; Miller v. Prudential Ins. Co. of America, 2008 WL 4540998, * (S.D. Fla. Oct. 9, 2008).  The

---

[4] William v. BellSouth Telecomm., Inc., 373 F.3d 1132, 1138 (11th Cir. 2004) (enumerating a sixth step in analysis at which the conflict of interest was taken into consideration).

[5] See also White v. Coca-Cola Co., 2008 WL 4149706 (11th Cir. Sept. 10, 2008).

burden of proof of showing that an administrator's decision was arbitrary and capricious rests with the plaintiff. Doyle, 2008 WL 4272748, *7.

When the administrator has discretion to determine eligibility for benefits, as United in this case, then the arbitrary and capricious standard is applied. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 115, 109 S.Ct. 948, 957, 103 L.Ed.2d 80 (1989). The analysis always begins, however, with a de novo review of whether the administrator's decision was "wrong" and, if so, whether it was nevertheless reasonable. After this initial determination, if the decision was "wrong," then, under the arbitrary and capricious standard, all of the various factors, including a conflict of interest, are weighed.

## ANALYSIS

The issue in this case is whether the "off-label" usage of drugs normally prescribed for cancer is considered experimental or investigational under this particular plan when prescribed for pain management.[6] Plaintiff argues that United failed to follow its own plan criteria by failing to consult the American Hospital Formulary Service or the United States Pharmacopoeia Dispensing Information. Additionally, Plaintiff argues that there is no evidence in the administrative record that United attempted to confirm or deny that the drugs fell within the purview of unproven services. Finally, Plaintiff asserts that because

---

[6] It is not unlawful to prescribe a drug for treatment of medical conditions not specifically indicated in the FDA approval label.

United originally paid benefits for Fentora in February 2007, it must continue to cover Fentora and Actiq.

For the following reasons, the Court finds that United's decision was not de novo "wrong," and, therefore, the decision should be affirmed.  First, the fact that United paid for one prescription for Cassanese in February 2007 does not create any legal presumption that benefits should continue.  Cf. Stilz v. Metropolitan Life Ins. Co., 244 Fed.Appx. 260, 265 (11th Cir. 2007) (unpublished opinion) (stating that previous payment of disability benefits should not be considered in review of decision to deny continuation of those benefits).  The language of the plan itself even underscores United's discretion to offer services in some case but not in others: "[W]e may, in our sole discretion, offer Benefits for services that would otherwise not be Covered Health Services.  The fact that we do so in any particular case shall not in any way be deemed to require us to do so in other similar cases."  No authority has been cited that supports requiring United to continue to pay for an experimental drug that has not been marketed for the proposed use of pain management in patients who are not suffering from cancer and who are not also opioid tolerant.

Second, the language of the plan defines experimental and investigational medication as both not approved by the FDA for the proposed use and not identified by either of two pharmaceutical references.  Unquestionably, neither Actiq nor Fentora was approved by the FDA for use in noncancer patients who experience continuous pain as

Cassanese.[7] There is nothing in the record that discloses whether United consulted either of the two references. Despite this deficit, Cassanese has not shown this Court that either Actiq or Fentora have been identified in one of the two references as appropriate for use in patients who suffer pain but do not have cancer. The plan clearly states that these services will not be paid for even if recommended by a physician. (Dkt. 9, Exh. B, p. 0105). Plaintiff has therefore not carried his burden of proof to establish that United's decision to deem the drugs experimental or investigational for the purpose of treating noncancer patients for pain is violative of the language of the plan. See Doyle, 2008 WL 4272748, *7.

---

[7] Other courts have considered the appropriateness of denying drugs or treatment not approved under the experimental and investigational exclusion. See Ortlieb v. United HealthCare Choice Plans, 387 F.3d 778 (8th Cir. 2004) (denying coverage of drug treatment Total Parenteral Nutrition (TPN) as investigational and unsupported by any clinical improvement with use of drug for claimant's medical condition of malnutrition); Morse LLC v. Beckman Coulter, Inc., 455 F.Supp.2d 1339 (S.D. Fla. 2006) (holding that denial of benefits was not wrong where CyberknifeSterotactic Radiosurgery was unproven, experimental and investigational treatment for solitary liver metastasis from primary colon cancer). The instant case is distinguishable from situations in which the plan does not define "experimental" or "investigational." See Dahl-Eimers v. Mutual of Omaha Life Ins. Co., 986 F.2d 1379, 1383-84 (11th Cir. 1993) (reversing district court's declaration that term "experimental" or "considered experimental" was unambiguous where plan did not define that term or how determination would be made); McLeroy v. Blue Cross/Blue Shield of Oregon, Inc., 825 F.Supp. 1064, 1072-73 (N.D. Ga. 1993) (distinguishing the facts from Dahl-Eimers because plan did define "experimental" and "investigational" and how determination would be made); I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Eng'r Council Ins. Trust Fund, 136 F.3d 114 (2nd Cir. 1998) (holding that plan terms were ambiguous as to its coverage of FDA-approved drugs for "off-label" uses— drug used to combat neutropenia in cancer but not AIDS patients).

Finally, although Plaintiff does not develop his argument regarding United's failure to determine whether the drugs fell within the plan's definition of unproven services, the Court finds that there is nothing to suggest that the drugs would have been considered unproven services. No authority has been cited that suggests these drugs have been the subject of trials or studies in cancer-free individuals experiencing pain. Moreover, there does not appear to exist a duty to affirmatively state in the record that either the particular service is or is not the subject of a trial.

Having concluded that United's decision to deny benefits is not "wrong," the decision must be affirmed. It is therefore **ORDERED AND ADJUDGED** as follows:

(1)　Defendant's Motion for Summary Judgment (Dkt. 9) is **GRANTED.**

(2)　The clerk is directed to enter judgment for Defendant and against Plaintiff.

(3)　The clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, on October 20, 2008.

　　　　　　　　　　　　　　　　　　s/*Richard A. Lazzara*
　　　　　　　　　　　　　　　　　**RICHARD A. LAZZARA**
　　　　　　　　　　　　　　　　　**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record